**SO ORDERED.**

**SIGNED this 19 day of September, 2011.**



_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

IN RE:                                                                              CASE NO.

**SOMERSET PROPERTIES SPE, LLC**                              10-09210-8-SWH

      **DEBTOR**

### ORDER REGARDING VALUATION OF PROPERTY

The matter before the court is the joint request for valuation of the debtor's property. Hearings took place in Raleigh, North Carolina, on June 20, 2011, June 27, 2011, and July 21, 2011, and post-hearing briefs were submitted on August 5, 2011.

### Background

Somerset Properties SPE, LLC filed a petition for relief under chapter 11 of the Bankruptcy Code on November 8, 2010. The debtor owns and operates six office buildings in Raleigh, North Carolina, known as "Somerset Park" and "Somerset Center and Place." On February 17, 2011, the debtor filed its plan of reorganization. LNR Partners, LLC[1] holds a security interest in the debtor's real property, and filed an objection to confirmation of the plan on April 20, 2011. On May 26, 2011, the debtor and LNR attempted mediation of many disputed claims, including the proposed

---

[1] Acting as special servicer to CSFB 2001-CP4 Falls of Neuse, LLC and CSFB 2001-CP4 Bland Road, LLC.

treatment of LNR's claim under the plan, as well the claims at issue in a pending adversary proceeding. During the mediation, the parties determined that they could not address these issues without first resolving their disagreement as to the value of the subject property. As a result, the parties requested that the court determine the value of the debtor's real property, and plan to resume mediation once that value has been ascertained.

## Discussion

Although the court considered the testimony of all witnesses presented at the hearings, it gives greatest weight on matters of valuation to that of the two appraisers, Craig D. Smith and Chris R. Morris. Mr. Smith values the property at $24,500,000 and Mr. Morris values the property at $27,125,000. The parties agree that the valuation methodology and assumptions of the appraisers are substantially similar except as to three areas of expenses: 1) tenant improvements, 2) broker commissions, and 3) capital expenditures. Although the court does not fully adopt the valuation of either appraiser, for the reasons set forth below it believes that the appropriate value number can be derived by applying the following modifications to Mr. Morris' calculations.[2]

1)      Tenant Improvements

Mr. Morris employed a $10 per square foot tenant improvement expense figure for new leases and a $5 per square foot figure for lease renewals in his discounted cash flow analysis. Mr. Smith utilized $15 and $7 figures in his. The court is persuaded by the testimony of Mr. Dennis D. Hurley, a commercial real estate broker, and Mr. Kevin J. Wilk, an agent of the debtor's manager, Somerset Properties, LLC, regarding the necessity in the applicable market for landlords to offer

---

[2]The same value could be determined by using Mr. Smith's appraisal as a starting point with converse modifications, but for Mr. Smith's reduction of the "as is" value for capital expenditures, rather than reducing net income by a capital expenditure expense.

significant incentives to prospective lessees for tenant upfit. The court notes that Mr. Morris acknowledged Mr. Hurley's familiarity with tenant expectations in this regard. The court does not however embrace the $20-25 per square foot figures forwarded by Hurley and Wilk, but will adopt the more conservative Smith figures. Using the comparative Exhibit 20 for guidance, it appears that the tenant improvement expense number used by Mr. Morris should be increased by $1,712,032.00.

2)      Broker Commissions

Mr. Morris utilized a 4% commission number for new leases and a 2% number for renewals for that component in his discounted cash flow analysis. Mr. Smith used 6% and 4% figures. The court is similarly persuaded that brokers are more apt to push properties regarding which they will earn higher commissions. Acknowledging the expertise of both appraisers, the court will average the commission rates and find that the correct numbers are 5% and 3%. Again, using Exhibit 20 for guidance, the expense number for commissions in the Morris analysis should be increased by $202,564.00.

3)      Capital Expenditures

Mr. Morris did not include an expense for capital expenditures, while Mr. Smith made a $1,900,000 reduction to "as is" value for capital improvements. The court finds that sufficient evidence of the need for capital improvements was introduced. Based upon the debtor's capital expenditure summary contained in Exhibit 9, and the schedule provided for such expenditure, the court finds that in order to bring the property to a state which will allow it to be effectively marketed, the expenditures set forth to be accomplished in the first two years of the plan should be considered in the valuation. The cost of those improvements, approximately $1,500,000, should therefore be included in the analysis by increasing Mr. Morris' expenditures by that figure.

3

<u>Conclusion</u>

The court therefore directs the parties to recalculate the discounted cash flow analysis of Mr. Morris using the additions to expenses set forth above and jointly submit the resulting valuation number to the court within 5 days of the date of this order.

**SO ORDERED**.

**END OF DOCUMENT**