

**SO ORDERED.**

**SIGNED this 12 day of April, 2012.**

_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:                                                                                          CASE NO.

**SOMERSET PROPERTIES SPE, LLC**                        10-09210-8-SWH

       **DEBTOR**

### ORDER ALLOWING OBJECTION TO CLAIM

The matter before the court is the debtor's Objection to Claim No. 14 filed by MGHC Group, LLC ("MGHC"). A hearing was conducted in Raleigh, North Carolina on January 17, 2012, and MGHC and the debtor filed supplementary memoranda on February 3 and February 17, 2012, respectively. For the following reasons, the debtor's objection to the proof of claim is allowed.

### BACKGROUND

On November 8, 2010, Somerset Properties SPE, LLC ("Somerset") filed a voluntary petition for relief in the Eastern District of North Carolina pursuant to chapter 11 of the Bankruptcy Code. The bar date for filing proofs of claim was set for March 15, 2011. MGHC filed a Motion for Relief from Stay on February 25, 2011, seeking authority to continue ongoing litigation in New Jersey state court (<u>MGHC Group, LLC v. Mill Ridge Farm IV, LLC et al.</u>, New Jersey Superior Court, Morris Co. Docket No. MRS-L-3090-09) (the "New Jersey Litigation"), with respect to which Somerset is one of over 20 defendants. MGHC's First Amended Complaint filed in the New

Jersey Litigation was attached to the stay motion. MGHC served the stay motion on the debtor on March 14, 2011. MGHC subsequently filed a Proof of Claim on March 20, 2011, five days after the bar date.

MGHC's stay motion was denied on May 2, 2011. Thereafter, on June 14, 2011, MGHC filed a Motion to Allow a Late-Filed Proof of Claim, and that motion was granted on August 24, 2011, following a hearing. The court concluded that since the stay motion included a copy of the complaint, it constituted a timely filed informal proof of claim which was then amended with the formal filing. The debtor objected to MGHC's claim on September 8, 2011, and MGHC responded to the objection on October 11, 2011.

MGHC's original March 20 proof of claim set forth a $6,000,000 claim against the debtor, but in a post-hearing brief, MGHC amended the amount of its claim to $481,000. The claim is based upon the allegations contained in the complaint filed in the New Jersey Litigation in which MGHC seeks to recover damages in connection with the construction of a commercial building at 6 Mill Ridge Lane, Chester, New Jersey (the "New Jersey Property"). The New Jersey Litigation names numerous defendants, including 7 identified corporate entities, 4 identified persons, 10 unidentified corporate entities, and 5 unidentified persons. The debtor is one of the named corporate defendants and five of the causes of action set out in the complaint are alleged against the debtor: conversion, unjust enrichment, constructive fraud in violation of New Jersey's version of the Uniform Fraudulent Transfer Act, actual fraud, and civil conspiracy. The gist of the complaint is that the debtor engaged in a civil conspiracy with other defendants to convert property of and defraud MGHC, and, in addition, that the debtor was the last in a chain of the unjustly enriched recipients of proceeds ensuing from actual fraud and fraudulent transfers. MGHC alleges that the fraudulent

transfers were initiated by Mill Ridge Farm IV, Inc. ("Mill Ridge Farm") and its principal, Kevin Wilk ("Wilk"); that Wilk is the managing member of MW Holdings, LLC, which is the managing member of Falls of Neuse Investments, LLC, which, in turn, is the managing member of Somerset Associates, LLC; and that Somerset Associates, LLC is the sole member of the debtor.

The basic facts and framework of the New Jersey Litigation are relevant here, and begin with a construction contract formed in New Jersey in 2005. On September 15, 2005, MGHC and Mill Ridge Farm entered into a Real Property Purchase and Sale Agreement (the "Agreement") whereby Mill Ridge Farm agreed to construct an office building and sell it to MGHC. MGHC agreed to purchase the developed property for a total of $4,500,000, and agreed to advance $3,200,000 against the purchase price to Mill Ridge Farm pursuant to a Note secured by a Mortgage on the New Jersey Property. The advances to Mill Ridge Farm by MGHC accrued interest at six percent per annum until closing, which was to occur on October 31, 2006. During the course of construction, the parties amended the Agreement to reflect that MGHC had advanced a total of $3,800,000 to Mill Ridge Farm. Ultimately, however, Mill Ridge Farm was unable to complete the project and defaulted under the Agreement. MGHC initiated a foreclosure action in New Jersey on November 23, 2007. On August 15, 2008, the New Jersey state court found that Mill Ridge Farm was in default of the Agreement and directed that a non-contested foreclosure proceed. MGHC purchased the premises for $100 at a foreclosure sale held on August 21, 2009, creating a deficiency in excess of $5,200,000.

MGHC claims that during development of the New Jersey Property, Wilk misappropriated funds from the project and funneled them through his personal bank accounts and those of related entities, ultimately using the funds as a deposit to finance the purchase of the debtor's property in

North Carolina (the "North Carolina Property"). The debtor denies that any funds were misappropriated and/or that any such funds from the New Jersey project were used to finance the debtor or the purchase of its property. Furthermore, the debtor disputes MGHC's position that the debtor can be held liable to MGHC, an entity with which it did not contract or otherwise have any involvement.

At the hearing, MGHC offered the testimony of its president, Bruce Haskell, with regard to the property transaction, the default, foreclosure, and monies spent by MGHC to complete the project after it purchased the New Jersey Property at the foreclosure sale. MGHC also offered the testimony of Robert Meier, a forensic accountant who analyzed transactions between MGHC, Mill Ridge Farm, Wilk, and MW Holdings (another named defendant in the New Jersey Litigation) and reviewed certain relevant bank account information. Meier's conclusion was that using the aggregate balance method, the funds used to purchase the debtor's North Carolina Property could be traced to MGHC's advances to Mill Ridge Farm. In contrast, Wilk testified on behalf of the debtor that the deposit made by the debtor on the purchase of its North Carolina Property originated not from MGHC, but from Wilk's personal line of credit.

## DISCUSSION

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. The Eastern District of North Carolina is the proper venue for this case, pursuant to 28 U.S.C. §§ 1408 and 1409. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(B), which this court may hear and determine.

Rule 3001 of the Federal Rules of Bankruptcy Procedure sets forth the required form and content of a proof of claim, and in Rule 3001(a) defines a proof of claim as a "written statement setting forth a creditor's claim." Subsection (f) of Rule 3001 establishes that proofs of claim which are filed and executed in accordance with the rules "constitute prima facie evidence of the validity and amount of the claim." Both the evidentiary standards and the burden of proof applicable to the claims allowance process were discussed by the Fourth Circuit in In re Harford Sands:

> The creditor's filing of a proof of claim constitutes prima facie evidence of the amount and validity of the claim. 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f). The burden then shifts to the debtor to object to the claim. 11 U.S.C. § 502(b). The debtor must introduce evidence to rebut the claim's presumptive validity. Fed. R. Bankr. P. 9017; Fed. R. Evid. 301. If the debtor carries its burden, the creditor has the ultimate burden of proving the amount and validity of the claim by a preponderance of the evidence.

In re Harford Sands, Inc., 372 F.3d 637, 640 (4th Cir. 2004) (internal citations omitted). MGHC's original proof of claim complied with Rule 3001, and constituted prima facie evidence of the validity and amount of the claim. However, the debtor has rebutted the claim's presumptive validity by asserting that liability should not be imputed to it merely because it has common ownership with other corporate defendants in the New Jersey Litigation, and also by denying that it used any of MGHC's advances. The debtor has thus carried its burden and MGHC must prove its claim against the debtor by a preponderance of the evidence in order for the claim to be allowed.

Both parties agree that New Jersey law applies to this court's determination of the validity of MGHC's claims. Furthermore, section 10.I.9 of the Agreement provides that the laws of New Jersey govern the construal and enforcement of the parties' agreement.

Nature of the Relationship: Debtor-Creditor or Trust

At the onset, the court turns its attention away from the debtor and to the relationship between MGHC and Mill Ridge Farm, between which the allegedly fraudulent series of transactions began. At issue is whether their relationship created a trust or a mere debtor-creditor relationship. MGHC asserts that a trust was created at the time it advanced funds to Mill Ridge Farm and that the use of that money was limited to construction purposes. Furthermore, MGHC argues, if the funds were used for any other purpose, and could be traced, then they could be recoverable from a third party, such as the debtor. On the other hand, the debtor contends that a debtor-creditor relationship existed between Mill Ridge Farm and MGHC and that no trust was created. Under the debtor's theory, MGHC has, at most, a breach of contract action against Mill Ridge Farm, and any resulting liability under the contract cannot extend to the debtor.

Under New Jersey law, whether a debt or trust relationship is created upon the payment of money by one party to another depends primarily upon their intentions. "The issue of trust or no trust turns almost invariably on proof of intention since the trust arises upon mere expression of the requisite intention." State v. U.S. Steel Co., 95 A.2d 740, 744 (N.J. 1953). "Frequently there is no explicit understanding as to the terms upon which the payee is to hold the funds, and then the nature of the transaction must be divined through consideration of the parties' behavior and the attendant circumstances." State v. Atlantic City Elec. Co., 128 A.2d 861, 865 (N.J. 1957) (citing State v. Western Union Tel. Co., 110 A.2d 115 (N.J. 1954)). In such cases,

> [t]he intention of the parties will be ascertained by a consideration of their words and conduct in the light of all the circumstances. Among the circumstances which may be of importance in determining the intention of the parties are: (1) the presence or absence of an agreement to pay interest on the money paid; (2) the amount of money paid; (3) the time which is to elapse before the payee is to be

>called upon to perform his agreement; (4) the relative financial situation of the parties; (5) the relations between the parties; (6) their respective callings; [and] (7) the usage or custom in such or similar transactions.

Kronisch v. Howard Sav. Inst., 392 A.2d 178, 179-80 (N.J. Super. Ct. App. Div. 1978) (discussing "established principles of trust law" and the factors courts consider in determining "whether a trust or a debt is created when one party pays money to another"). "[T]he mere fact that a[n] . . . entity has accepted funds for transmittal to a third party does not necessarily give rise to a trust relationship." Id.

Courts have held that the most important factor for determining whether a debtor-creditor or informal trust relationship exists relates to the payment or nonpayment of interest. Atlantic City Elec., 128 A.2d at 866. "One party permitting another to use its money for a period of time in exchange for the payment of interest is the hallmark of a debtor-creditor relationship." In re Columbia Gas Sys., 997 F.2d 1039, 1060 (3d Cir. 1993). It is reasonable to expect that unless there is a clear manifestation of contrary intent, the recipient of money who obligates himself to pay interest has the beneficial as well as the legal interest in the money, and presumably a debt is established in such cases as opposed to a trust. Atlantic City Elec., 128 A.2d at 866. The payment of interest is "strongly persuasive that the intent was to create a debt rather than a fiduciary responsibility." Id. The Agreement between Mill Ridge Farm and MGHC undisputedly provided for the accrual of interest and a credit for that interest against the ultimate purchase price of the New Jersey Property. That accrual of interest is, in fact, a component of MGHC's claim, and strongly evinces that the parties' relationship was that of a debtor and creditor.

Typically, the commingling of funds also indicates a debtor-creditor relationship. Columbia Gas Sys., 997 F.2d at 1060. A "finding that the parties [stand] in a relationship of debtor and

creditor necessarily implies a finding that the [recipient was] entitled to commingle" advance payments. Kronisch, 392 A.2d at 186. When there is "no provision for segregating the payments" and payments are not segregated, there is "strong evidence that no trust was intended." Id. at 184 (citing Atlantic City Elec., 128 A.2d at 867; Western Union Tel., 110 A.2d at 117). In this case, nothing in the loan documents between MGHC and Mill Ridge Farm prevented Mill Ridge Farm from commingling the funds advanced by MGHC.[1] This, too, indicates that MGHC and Mill Ridge Farm did not intend to form a trust, but rather were operating in the roles of creditor and debtor.

A relationship of two parties as mortgagor and mortgagee also points toward their status as debtor and creditor. See American Nat'l Bank & Trust v. Leonard, 399 A.2d 663, 665 (N.J. Super. Ct. App. Div. 1979); Kronisch, 392 A.2d at 180. In such relationships, "payments [are] intended to benefit the mortgagee, not the mortgagors, and the mortgagors do not retain any beneficial interest in the money deposited." Id. at 665 (citing Kronisch, 392 A.2d at 180, Atlantic City Elec. Co., 128 A.2d at 867). "A mortgagor ceases to have any control over or interest in advance . . . payments once the funds are delivered to a mortgagee." Id. The courts in the above-cited cases[2] found that mortgagors' advances to mortgagees were part of a debtor-creditor relationship, and that the mortgagees were not the trustees of those payments. In this case, MGHC advanced monies to Mill Ridge Farm against the purchase price of the New Jersey Property. MGHC took a security interest

---

[1] MGHC points to Section 2 of the Mortgage, which states that "Lender has agreed to provide financing for the construction of the Building on the Land ("Project")." Claimant's Ex. 2 at p. 1. The court is not persuaded that this language serves as a prohibition against commingling and finds that it is merely a description of the debtor-creditor relationship between the parties.

[2] These cases, including Kronisch, considered competing claims of entitlement to interest earned on escrowed funds paid by mortgagor banks to mortgagee savings and loan associations. The mortgagor and mortgagee relationships are thus "reversed" from those at issue in this case; however, the basic principles by which to determine the existence of either a trust or a debtor-creditor relationship are fully applicable in the case at bar.

in the property to secure those advances. Again, this scenario is indicative of a debtor-creditor relationship, not a trust.

The court has reviewed the cases cited by MGHC in support of its contention that a trust relationship was created between MGHC and Mill Ridge Farm, and finds them factually distinguishable. In Flint Ink Corp. v. Calascibetta, 2007 WL 2687415, at *6 (D.N.J. Aug. 31, 2007), the court found that an express trust existed based upon the agency relationship created by contract, which required that specific payments be made to certain parties within a specified period of time and that payments and fees be segregated. The court in In re Wolke, 2008 WL 413316, at *5 (Bankr. D.N.J. Feb. 13, 2008) held that a trust existed in the context of a daughter's fiduciary duties regarding the maintenance of the finances of her elderly ailing mother. These cases are based upon crucial factual underpinnings that are in no way comparable to the facts before this court, and accordingly they do not support MGHC's arguments.

In sum, all of the important factors considered in determining whether the relationship between the parties is a trust or that of a debtor and creditor demonstrate that, in fact, there was no trust relationship between MGHC and Mill Ridge Farm. Ultimately, MGHC and Mill Ridge Farm were mortgagee and mortgagor. Mill Ridge Farm did not owe MGHC the fiduciary duty appurtenant to a trust relationship with respect to its advance of funds for the construction of the New Jersey Property. A claimant must demonstrate the existence of a trust relationship before attempting to trace the funds it means to recover, and the lack of such a relationship in this case

precludes the tracing of the funds paid to Mill Ridge Farm to the debtor. City of Farrell v. Sharon Steel Corp., 41 F.3d 92, 95 (3d Cir. 1994).[3]

The court must now consider the specific causes of action asserted by MGHC against the debtor in light of the determination that no trust existed between MGHC and Mill Ridge Farm, the initial transferee of the funds in question.

Conversion

MGHC asserts a cause of action for conversion against the debtor in the New Jersey Litigation. Conversion is the "intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Bondi v. Citigroup, Inc., 32 A.3d 1158, 1190 (N.J. Super. Ct. App. Div. 2011). The tort applies to money and other securities "as long as the plaintiff has an actual interest in the security and it is capable of misuse in a way that would deprive the plaintiff of its benefit." Id. New Jersey law has applied the tort of conversion to money where the sum of money belonged to the injured party and is identifiable. Pfeiffer v. Wulster, 2011 WL 1045355, at *5 (Bankr. D.N.J. Mar. 17, 2011), aff'd, Wulster v. Pfeiffer, 2012 WL 589564 (D.N.J. Feb. 22, 2012).

To prove conversion, a plaintiff must show that "the property allegedly converted must have belonged to the injured party." Sun Coast Merch. Corp. v. Myron Corp., 922 A.2d 782, 800 (N.J.

---

[3] MGHC contends that it had the right to expect that its payments would be used only for the improvement of the New Jersey Property, and cites to Craft v. Stevenson Lumber Yard, 843 A.2d 1076, 1087 (N.J. 2004); Nat'l Surety Corp. v. Barth, 95 A.2d 145, 149 (N.J. 1953) and Reliance Ins. Co. v. Lott Group, Inc., 851 A.2d 766 (N.J. Super. Ct. App. Div. 2004) in support of this assertion. However, those cases rely upon a threshold finding of the existence of a trust relationship, which is precluded here. The same is true for the cases allowing application of the aggregate balance tracing theory; they are, for the same reasons, found to be inapposite.

10

Super. Ct. App. Div. 2007). "An action for conversion will not lie in the context of a mere debt; where there is . . . only a relationship of a debtor and creditor, an action for conversion of the funds representing the indebtedness will not lie." Bondi, 32 A.3d at 1190. As stated before, MGHC and Mill Ridge Farm were in just such a debtor-creditor relationship. Accordingly, there was no conversion of funds by Mill Ridge Farm. Since MGHC's claim of conversion against the debtor is derivative of that against Mill Ridge Farm, it too must fail.

Unjust Enrichment

Next, MGHC alleges that the debtor was unjustly enriched in the amount of $481,000 as a result of transfers made by Wilk on the debtor's behalf, the origin of which MGHC contends were MGHC advances to Mill Ridge Farm. "To sustain a cause of action for unjust enrichment, plaintiff must have 'expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that failure of remuneration enriched defendant beyond its contractual rights.'" Wanland & Assocs. v. Nortel Networks Ltd., 384 B.R. 315, 330-31 (Bankr. D.N.J. 2008) (quoting VRG Corp. v. GKN Realty Corp., 641 A.2d 519, 526 (N.J. 1994)). Under New Jersey law, "unjust enrichment claims require 'some direct relationship between the parties,'" and having no dealings with a party disallows recovery on a theory of unjust enrichment. In re Rezulin Prods. Liab. Litig., 390 F. Supp. 2d 319, 343-44 (S.D.N.Y. 2005). Finally, "there must be clear proof of some wrongful act, such as fraud, . . . before a party may claim a right to recovery." Kronisch, 392 A.2d at 185. There is no evidence that the MGHC had a direct relationship with the debtor pursuant to which it expected remuneration. In addition, MGHC has offered no clear proof that the debtor acted wrongfully. A claim of unjust enrichment against the debtor cannot stand.

Constructive Fraud

MGHC further alleges that the debtor violated New Jersey's codification of the Uniform Fraudulent Transfer Act, N.J. Stat. Ann. § 25:2-20 et seq. MGHC's complaint alleges that the debtor, in tandem with all other defendants, engaged in constructive and actual fraud. A successful claim of constructive fraud must satisfy either N.J. Stat. Ann. § 25:2-25(b) or N.J. Stat. Ann. § 25:2-27, which together establish that "[u]nder New Jersey law, a transfer is deemed fraudulent if the transferor made the transfer while insolvent and the transferor received less than 'reasonably equivalent value.'" In re Markson Rosenthal & Co., Inc., 2009 WL 3763048, at *10 (Bankr. D.N.J. Oct. 27, 2009) (citing N.J. Stat. Ann. § 25:2-27(a)).

MGHC alleges that Mill Ridge Farm and another defendant in the New Jersey Litigation, Mill Ridge Group, made fraudulent transfers to the debtor and the remaining defendants. Section 25:2-30(b) of the New Jersey statutes would then allow MGHC to recover the value of the transfers from the initial transferee or any subsequent transferee. N.J. Stat. Ann. § 25:2-30(b). The evidence, however, establishes the reasonable equivalency of the value of the transfers among these parties in connection with the development of the New Jersey Property, which forecloses constructive fraud claims pursuant to N.J. Stat. Ann. §§ 25:2-25(b) and 25:2-27(a).[4] In sum, the

---

[4] MGHC argues that checks written from Mill Ridge Farm to Wilk and an increase in the aggregate value of Wilk's bank accounts over time reflect fraudulent transfers. This is a selective view of the transfers among the pertinent parties, and not one that the court chooses to adopt, especially since MGHC has the burden of proof. From March 2006 to March 2007, Mill Ridge Farm transferred by check $1,288,000 to Wilk and $1,636,100 to Mill Ridge Group. (MGHC made payments to both Mill Ridge Farm and Mill Ridge Group for the development of the New Jersey Property.) In the years 2006 and 2007, Wilk transferred by check $52,000 to Mill Ridge Farm and $1,243,000 to Mill Ridge Group. These transactions do not indicate that MGHC's advances were siphoned; rather, they show that Mill Ridge Group, capitalized through Wilk, managed the

transfers appear wholly unremarkable. With respect to the other grounds for establishing a constructive fraud claim, N.J. Stat. Ann. § 25:2-27(b), the court is not persuaded that MGHC has made the appropriate showing that there were transfers made for antecedent debt when any entities were insolvent and an insider had reasonable cause to believe so. MGHC failed to establish a constructive fraud claim against Mill Ridge Farm, the initial transferee, and certainly cannot do so against the debtor.

Actual Fraud

Regarding actual fraud, "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." N.J. Stat. Ann. § 25:2-25(a); see also Gilchinsky v. Nat'l Westminster Bank N.J., 732 A.2d 482, 488 (N.J. 1999). In examining a transferor's conduct, courts may "consider the 'badges of fraud'" codified in N.J. Stat. Ann. § 25:2-26 "in considering whether actual fraud is present." In re Lopresti, 2006 WL 2708605, at *11 (Bankr. D.N.J. Sept. 20, 2006) (citing In re Victor Int'l Inc., 278 B.R. 67, 82 (Bankr. D.N.J. 2002)).

In this case, the facts belie the allegation that the parties made transfers "with actual intent to hinder, delay, or defraud any creditor." N.J. Stat. Ann. § 25:2-25(a). After Mill Ridge Farm agreed to improve the New Jersey Property, Mill Ridge Farm spent the interest-bearing $3,800,000 advanced by MGHC against the $4,500,000 purchase price to construct the building. Mill Ridge Farm completed the building, save for landscaping and parking estimated at a cost of no more than $300,000, according to the testimony of Bruce Haskell, president of MGHC. Practically speaking,

---

construction project for which Mill Ridge Farm had contracted with MGHC. Mill Ridge Farm improved the New Jersey Property as it agreed to do, failing to complete final improvements only when its funding proved insufficient. MGHC has failed to prove a lack of reasonable equivalency.

13

it appears that Mills Ridge Farm fell just shy of completing its contractual obligations and, at worst, this constitutes a breach of contract by Mill Ridge Farm. It certainly does not indicate that Mill Ridge Farm, and certainly much less the debtor, had the intent to defraud and actually defrauded MGHC.

Civil Conspiracy

Finally, MGHC alleges that the debtor engaged in a civil conspiracy with the other defendants. Four elements comprise this tort: "'(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages.'" In re Aaroe, 2011 WL 2886312, at *5 (Bankr. D.N.J. July 14, 2011) (quoting Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 414 (3d Cir. 2003)). "The gravamen of an action in civil conspiracy is not the conspiracy itself but the underlying wrong which, absent the conspiracy, would give a right of action." In re Jeep Eagle 17, Inc., 2010 WL 4864171, at *6 (Bankr. D.N.J. Nov. 23, 2010). MGHC notes that companies and their officers are "two or more persons" for the purposes of establishing a civil conspiracy. See State, Dep't of Treasury v. Qwest, Inc., 904 A.2d 775 (N.J. Super. Ct. 2006). The court need not address this contention, as MGHC's claim falls short for more substantive reasons than the existence of a combination of parties.

Yet again, MGHC's effort to cast a wide net fails to catch what it appears to consider its biggest fish, Mill Ridge Farm, and again fails to make any relevant connection to the debtor. Mills Ridge Farm contracted with MGHC for a legitimate business purpose – the construction of the building on the New Jersey Property. Mill Ridge Farm proceeded to construct the building. MGHC has utterly failed to establish that the defendants in the New Jersey Litigation acted with an unlawful

purpose or with a lawful purpose achieved by unlawful means in the course of Mill Ridge Farm's dealings with MGHC. For that reason, there is no plausible evidence before the court of any underlying wrong for which MGHC would have a viable cause of action in civil conspiracy *against the debtor*. See Board of Ed. v. Hoek, 183 A.2d 633, 646 (N.J. 1962).

## CONCLUSION

MGHC's proof of claim relies entirely on a complaint in which the debtor is one of dozens of defendants, and which arises from a project in which the debtor played no part. None of MGHC's causes of action against the debtor as stated in the complaint – for conversion, unjust enrichment, constructive fraud, actual fraud, or civil conspiracy – can withstand analysis under New Jersey law. The debtor's objection to MGHC's claim is hereby allowed.

**SO ORDERED**.

## END OF DOCUMENT