**SO ORDERED.**

**SIGNED this 23 day of August, 2012.**

_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| **SOMERSET PROPERTIES SPE, LLC** | **10-09210-8-SWH** |
| **DEBTOR** | |

**ORDER REGARDING EXISTENCE OF ACCEPTING IMPAIRED CLASS**

This case came before the court for a hearing on confirmation of the debtor's Chapter 11 plan on June 14, 2012, in Raleigh, North Carolina. On behalf of CSFB 2001-CP4 Falls of Neuse, LLC, and CSFB 2001-CP4 Bland Road, LLC, the secured lenders and largest creditors in this case, their special servicer, LNR Partners, LLC (hereinafter "Lenders") filed an objection to confirmation. At the hearing, the parties identified the threshold issue of whether the debtor's plan had the acceptance of at least one impaired class of creditors. That question was taken under advisement and, on June 15, 2012, the court notified the parties by email of its ruling that an impaired accepting class does exist in this case. This order sets out the bases for the court's decision.

BACKGROUND

Somerset Properties SPE, LLC filed a petition for relief under Chapter 11 of the Bankruptcy Code on November 8, 2010. The debtor owns and operates six office buildings in Raleigh, North Carolina, known as "Somerset Park" and "Somerset Center and Place." On February 17, 2011, the debtor filed its initial plan of reorganization. The Lenders hold a security interest in the debtor's real property, and filed an objection to confirmation of the plan on April 20, 2011. On May 3, 2012, the debtor filed its first amended plan, which does not change the classification of the claims at issue. Here, the debtor's amended plan includes six (6) classes that are impaired and thus entitled to vote; specifically, Classes 2, 3, 4, 5, 6, and 7, comprised as follows:

- Class 2 includes allowed secured tax claims and allowed priority tax claims.
- Class 3 is comprised of the allowed secured claim of CSFB 2001-CP4 Bland Road, LLC.
- Class 4 is comprised of the allowed secured claim of CSFB 2001-CP4 Falls of Neuse, LLC.
- Class 5 is comprised of all allowed unsecured claims in amounts less than $10,000.
- Class 6 is comprised of all allowed unsecured claims other than those treated in other classes.
- Class 7 is comprised of the allowed unsecured claims of the Lenders.

The Lenders are the only members of Classes 3, 4, and 7, and have voted to reject the plan.[1] As Classes 5 and 6 are impaired and accepting, the requirements of § 1129(a)(10) appear, facially, to be met. On June 11, 2012, the Lenders filed an objection to confirmation setting out its position

---

[1] Whether the Class 2 members, if any, would vote to accept the plan is irrelevant for present purposes because priority tax claimants cannot serve as the required impaired class to accept the plan under § 1129(a)(10). See In re Bryson Props., 961 F.2d 496, 505 (4th Cir. 1992) ("We agree that priority tax claimants, which receive preferential treatment under the Code . . . are not an impaired class that can accept a plan and bind other truly impaired creditors to a cram down.").

that there was no proper accepting impaired class and that confirmation was precluded by § 1129(a)(10).

## DISCUSSION

Section 1129(a)(10) of the Bankruptcy Code requires that "[i]f a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan [must have] accepted the plan, determined without including any acceptance of the plan by any insider." The Lenders contend that the debtor's proposed plan fails the requirements of § 1129(a)(10) on two grounds. First, the Lenders argue that the creation of a separate class, Class 7, for the Lenders' deficiency claim violates § 1122 and does not provide the requisite accepting impaired class under § 1129(a). Second, the Lenders dispute the separate classification of the administrative convenience class, Class 5. They argue that it is artificially impaired, and contend that acceptance by an administrative convenience class alone cannot be sufficient for confirmation. For the reasons that follow, the court concludes that acceptance by the impaired administrative class is sufficient to satisfy the requirement that at least one impaired class accepts the plan.

1.  Separate Classification of the Lenders' Deficiency Claim

The court turns first to the issues surrounding classification of the Lenders' deficiency claim separately from the general unsecured claims. The Lenders assert two objections to confirmation regarding the separation and treatment of Classes 6 and 7:  First, the Lenders argue that the separation of substantially similar unsecured claims into two classes is improper, and second, the Lenders note that inasmuch as the treatment of Classes 6 and 7 is virtually identical, there can be no legitimate basis for the separation of the Lenders' deficiency claim from the general unsecured claims and, therefore, no valid accepting class under § 1129(a)(10).

In response, the debtor, relying heavily on In re Deep River Warehouse, 2005 WL 2319201 (Bankr. M.D.N.C. 2005), points to perceived inherent differences between the deficiency claim and the claims of trade creditors, describing those claim holders as "at odds" with one another because "[u]nsecured creditors have no collateral that motivates them in the decision-making process." Deep River, 2005 WL 2319201 at *5. As these two sets of creditors possess diverging goals and interests, the debtor asserts, separation is appropriate and permissible under the Bankruptcy Code. The court ultimately concludes on this issue that the debtor has failed to discharge its burden to show that there is a legitimate basis for the separate classification of Classes 6 and 7, and thus the accepting vote of Class 6 cannot satisfy § 1129(a)(10). The court's decision rests primarily on the failure of the debtor to give different treatment to those classes.

There is no mandate found in the Bankruptcy Code requiring that a plan place all similar claims in a single class. However, it is well-established that separate classification may not be created with the sole intent to achieve cram-down and, in most cases, classification must be accompanied by differential treatment. See, e.g., Bryson, 961 F.2d at 502 (holding that where separate classes were created but received identical treatment, the classification was impermissible); In re Trimm, Inc., 2000 WL 33673795 at *4 (Bankr. M.D.N.C. 2000) (noting that the Second, Third, Fourth, Fifth, Eighth, Sixth, and Ninth Circuits have held that "classification schemes designed solely to engineer compliance with the cram-down provision" shall not be allowed); In re Elmwood, Inc., 182 B.R. 845, 849 (D. Nev. 1995) (holding that a creditor's unsecured deficiency claim could permissibly be classified separately from other unsecured claims when each class was assigned a different repayment method).

In the present case, the court finds that the treatment afforded to each of these classes is, for all intents and purposes, identical. The debtor's plan outlines the treatment of Classes 6 and 7 as follows:

> Class 6 Claims. The Debtor shall pay quarterly installments of $31,250 to be split Pro Rata among Allowed Claims in Classes 6 and 7. Such payments shall commence to Class 6 three months after the Effective Date. Such payments shall continue until Class 6 Claimants have been paid 100% of their Class 6 Claims. Class 6 Claims shall accrue interest at the Federal Judgement Rate on the Confirmation Date.
>
> Class 7 Claims. The Debtor shall pay quarterly installments of $31,250 to be split Pro Rata among Allowed Claims in Classes 6 and 7. Such payments shall commence to Class 7 three months after a final judgment is rendered and all appeals are complete in Adversary Proceeding number 11- 00053-8-SWH. Such payments shall continue until Class 7 Claimants have been paid 100% of their Class 7 Claims. Class 7 Claims shall accrue interest at the Federal Judgment Rate on the Confirmation Date.

As both classes of claims shall be paid from the same quarterly installment amounts on the same practical time line, there is no appreciable difference in the treatment of these two unsecured classes.[2] The standard promulgated by the Fourth Circuit in Bryson is binding on this court, and the debtor's classification is improper under its guidance. Although the Bryson court acknowledged some degree of flexibility afforded to the debtor in proposing a plan, it clearly established the limits of such discretion as follows: where all unsecured claims receive the same treatment, yet are classified separately, the classification scheme at issue is "at a minimum, highly suspect." Bryson, 961 F.2d at 502; see also In re Greystone III Joint Venture, 995 F.2d 1274 (5th Cir. 1991) (as

---

[2] The payment to Class 7 deficiency claims would be delayed until a final judgment on the amount of that deficiency, if any, but the same would hold for any Class 6 claim holder whose claim was objected to by the debtor. The plan provides for payment to Allowed Claims, and neither Class 6 nor Class 7 claimants will be paid from the quarterly installment until their respective claims are finally allowed.

amended) (stating "thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan"). In the present case, as in Bryson, the debtor has failed to discharge its burden to demonstrate a legitimate basis for separating the relevant classes of unsecured claims, while treating them similarly. Thus, in the absence of a showing of such legitimacy, the debtor's proposed classification scheme is clearly "for the purpose of manipulating voting and it may not stand." Bryson, 961 F.2d at 502.

Because the debtor has failed to provide a legitimate justification for the classification and treatment of these two unsecured classes, their separation is impermissible under the Bryson standard, which governs in this matter. Accordingly, the existence of an accepting impaired class hinges on the validity of the administrative convenience class's accepting vote.

2.    Sufficiency of the Accepting Vote of an Administrative Convenience Class

The Lenders dispute the plan's creation and treatment of the administrative convenience class on multiple grounds. First, the Lenders argue that as an administrative convenience class, Class 5 must meet the "reasonable and necessary" standard set forth in § 1122(b) in order to warrant separate classification, and that it does not meet that standard. Further, even if Class 5 does meet the test, the Lenders contend it cannot serve as the sole impaired, accepting class in satisfaction of § 1129(a)(10) of the Bankruptcy Code. Finally, even if the acceptance of Class 5 is capable of carrying the plan to confirmation, the Lenders argue that these claims are not properly impaired pursuant to § 1124. The debtor disputes all three contentions.

The Lenders claim that the separate classification of the administrative convenience class is neither "reasonable" nor "necessary" as required by § 1122(b), which states that "[a] plan may designate a separate class of claims consisting only of every unsecured claim that is less than or

reduced to an amount that the court approves as reasonable and necessary for administrative convenience." According to the Lenders, the debtor is required to, but cannot, prove that treating such a small number of claims would be "truly burdensome." In re S & W Enter., 37 B.R. 153, 162-63 (Bankr. N.D. Ill. 1984). The debtor argues in response that the "truly burdensome" test is not the applicable standard for an administrative convenience class but that even if the test were found to apply, the classification of the present plan nevertheless successfully meets such a standard.

      The court finds the heightened standard for classification asserted by the Lenders is inapplicable, within the Fourth Circuit, to claims classified separately under § 1122(b). See Trimm, 2000 WL 33673795 at *5 (explaining that separate classification of similar claims must meet a reasonableness standard unless such classification falls within "the exception afforded under § 1122(b) authorizing separate classification of smaller unsecured claims when reasonable and necessary for administrative convenience"). Rather, the debtor only bears the burden of proving that he or she has some legitimate basis for separately classifying a claim or collection of claims. See, e.g., In re AG Consultants Grain Div., Inc., 77 B.R. 665 (Bankr. N.D. In. 1987); In re Aztec Co., 107 B.R. 585 (Bankr. M.D. Tenn. 1989); In re Jersey City Med. Ctr., 817 F.2d 1055 (3rd Cir. 1987).

      Instead, if "a plan proponent can articulate legitimate differences among otherwise substantially similar claims and if separate classification is in the best interest of the creditors and will foster reorganization, then separate classification may be proper." In re Simon, 2008 WL 2953471 at *2 (Bankr. E.D. Va. 2008); see also Trimm, 2000 WL 33673795 at *5 (noting that "[n]umerous courts have recognized that if there is a valid business justification then creditors which otherwise have the same priority status under the bankruptcy system may be classified and treated

7

differently"). The court finds such a legitimacy standard to be met, based on the timetable of payment of the claims and the interest of the debtor in expedient compensation of holders of very small unsecured claims.

Pursuant to § 1122(b) of the Bankruptcy Code, "[a] plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience." The consolidation and separate treatment of such claims "does not diminish the fact that they may be impaired and does not preclude them from being an impaired class of claims" for Chapter 11 plan confirmation purposes. In re Patrician St. Joseph Partners Ltd. P'ship, 169 B.R. 669, 678 (D. Ariz. 1994).

The Lenders rely heavily on cases that do not adequately support their position,[3] and the court is of the view that the Lenders' argument on this particular issue does not accurately reflect the current state of the law, which has decidedly shifted to recognize the acceptance of an administrative convenience class as sufficient for confirmation. See William L. Norton, Jr., 6 Norton Bankr. L. & Prac. 3d. ed. § 113:5  (explaining that cases reflecting the Lenders' position "may have lost their precedential impact" over the past decade due to the "Supreme Court's more recent insistence on adherence to literal interpretation absent an ambiguity").

The court also considers Class 5 to be a properly impaired class pursuant to the requirements of § 11129(a)(10), as the thirty-day delay in payment specified in the treatment of these claims constitutes a valid form of impairment under the Bankruptcy Code. Unlike in the plan in Dunes, which the Lenders cite as comparable, the debtor's plan in the present case contemplates the infusion

---

[3] In re Dunes Hotel Assocs., 188 B.R. 174 (Bankr. D.S.C. 1995); In re Willows Convalescent Ctrs. Ltd. P'ship, 151 B.R. 220 (D. Minn. 1991).

of funds sufficient to pay the administrative convenience class during the month following the effective date from the collection of rents.[4]  See Dunes,188 B.R. at 3.  The debtor has presented a compelling basis for delayed payment, which satisfactorily demonstrates that this class is permissibly impaired.[5]

## CONCLUSION

In sum, the court determines that the administrative convenience class is permissibly separated from the other classes identified in the debtor's plan and constitutes a valid impaired accepting class under § 1129(a)(10).  Thus, while the accepting vote of Class 6 will not satisfy § 11129(a)(10), Class 5 constitutes a valid impaired accepting class for the purposes of confirmation.

**SO ORDERED**.

**END OF DOCUMENT**

---

[4] In Dunes, the court found artificial impairment to be present where the debtor's plan proposed to repay an unsecured class in full over a six-month period even though the debtor had been demonstrated to have "enormous financial resources available" on the effective date.  As the debtor was capable of paying the full value owed to the unsecured class on the effective date, the court determined that the debtor's classification scheme evidenced a "gross manipulation of the Chapter 11 process." Dunes, 188 B.R. at 3.

[5] In this case, as in In re Swartville, 2012 WL 112990 (Bankr. E.D.N.C. 2012), the question of whether a debtor may "artificially impair" a class is not dispositive and thus not ripe for consideration.  Accordingly, this court, like the court in In re Schwarzmann, 103 F.3d 120 at *3 (4th Cir. 1996) (unpublished disposition), "need not decide whether the vote of an artificially impaired class to accept a plan counts under § 1129(a)(10) because the impairment to [the creditor's] claim is not artificial or insignificant."